John **GAYDOS, Bishop of the Diocese of Jefferson City acting by and Through SS Peter & Paul's Catholic Church Cemetery Board and SS Peter and Paul's Cemetery Board, Respondent,**

v.

Timothy J. **IMHOFF, Appellant.**

**No. WD 67362.**

Missouri Court of Appeals, Western District.

Feb. 19, 2008.

---

**8.** Breckenridge, J., was a member of this court at the time the case was argued and submitted. She was subsequently appointed a judge of the Supreme Court of Missouri but has been reassigned to this court as a special judge for the purpose of disposition of this case.

Shane L. Farrow, Esq., Jefferson City, for Appellant.

Richard J. Blanck, Esq., Booneville, for Respondents.

Before NEWTON, P.J., SPINDEN and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

The Circuit Court of Cooper County entered judgment against Timothy Imhoff on a conversion claim and ordered him to pay $25,000 in actual damages, plus prejudgment interest. On appeal, Imhoff contends the trial court erred in denying his statute of limitations defense and in awarding prejudgment interest. For reasons explained herein, we affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL HISTORY

Imhoff served as president of the board of directors for SS Peter & Paul's Cemetery[1] from 1990 until 2002. Board members are appointed by the pastor of the SS Peter & Paul's Catholic Church to operate and manage the cemetery, which is located in Boonville, Missouri. As board president, Imhoff had control over all Cemetery funds, bank records, checkbooks, and the post office box. From 1997 through May 2001, Imhoff was the only person to write checks and make deposits or withdrawals from the Cemetery's bank accounts.

At a board meeting on December 10, 2000, Imhoff was asked to report on the financial status of a fundraising project referred to as the "Engraved Brick Sidewalk." Board members became concerned when Imhoff said he did not know the exact amount of the fundraiser proceeds. Imhoff initially told the board that the proceeds were placed in two certificates of deposit at a Columbia bank. At a later meeting, he told the board the certificates of deposit did not exist.

On April 8, 2001, the board requested Imhoff to turn over all financial records for the Cemetery. Imhoff relinquished the Cemetery checkbook and a few other documents to the board treasurer in May 2001, but failed to turn over all of the financial records. In 2002, the board retained a certified public accountant (CPA) to audit the Cemetery's financial records and conduct a review of Imhoff's personal finances. The audit reported many undocumented transactions in the Cemetery's bank records, including unexplained cash withdrawals, fees collected without corresponding deposits, and no receipts or invoices for certain expenditures. The audit concluded that at least $20,845 was missing and unaccounted for in the Cemetery's bank accounts for the period of 1997 to 2000. Also during that period, Imhoff's personal accounts showed deposits of $183,051, although he declared only $97,746 in earned income.

In November 2005, the Cemetery filed a three-count petition against Imhoff seeking an accounting, damages for conversion of funds, and a constructive trust on funds that Imhoff unjustly received. A bench trial was held in July 2006. During opening statements, Imhoff's counsel asserted

1. The Cemetery is owned by John Gaydos in his capacity as Bishop of the Diocese of Jefferson City, Missouri. As respondents in this appeal, Gaydos, the Cemetery's board of directors, and the SS Peter & Paul's Catholic Church board of directors are collectively referred to herein as "Cemetery."

that all of the Cemetery's claims were barred by the five-year statute of limitations in Section 516.120.[2] The Cemetery's counsel responded that the claims were not barred because they resulted from "ongoing and continuing transactions." After opening statements, the court advised counsel as follows: "I think when you put your evidence on, you'll need to deal with the issue of when you discovered your losses; and then we can argue again at the conclusion whether or not [the statute of limitations defense is] applicable."

After evidence was presented at trial, the court entered judgment in favor of the Cemetery on the conversion claim and denied relief on the accounting and constructive trust claims. The judgment ordered Imhoff to pay actual damages of $25,000 and prejudgment interest dating from December 10, 2000. The court rejected the statute of limitations defense, finding that Imhoff waived the defense by failing to raise it in a responsive pleading. Imhoff appeals.

### STANDARD OF REVIEW

■ Review of this court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We must affirm the judgment of the circuit court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* "We must consider the evidence and all reasonable inferences in a light most favorable to the judgment, disregarding any evidence or inferences to the contrary." *Pulley v. Sandgren*, 197 S.W.3d 162, 165 (Mo.App.2006). "Although we give deference to the circuit court's factual determinations, our review

of any error in applying the law is *de novo.*" *Id.*

### STATUTE OF LIMITATIONS DEFENSE

In his first point on appeal, Imhoff contends the trial court erred in denying his statute of limitations defense based on a finding of waiver. Imhoff argues the affirmative defense was raised at trial without objection and was tried by consent of the court and the parties, as permitted by Rule 55.33(b).[3] Despite his failure to file a responsive pleading, Imhoff asserts the statute of limitations defense was properly presented at trial and should have been applied to bar the conversion claim. *See Damon Pursell Constr. Co. v. Mo. Highway & Transp. Comm'n*, 192 S.W.3d 461 (Mo.App.2006); *RPM Plumbing Mech., Inc. v. Jim Plunkett, Inc.*, 46 S.W.3d 60 (Mo.App.2001).

■ We need not address the precise error alleged because the record supports a finding that the Cemetery's claim was not barred by the applicable statute of limitations, regardless of whether the affirmative defense was properly presented. We must affirm the trial court's judgment if it is sustainable for any reason supported by the record. *Reagan v. County of St. Louis*, 211 S.W.3d 104, 107 (Mo.App. 2006).

■ Under Section 516.120, all actions upon contracts, obligations or liabilities, including actions for conversion, must be brought within a five-year statute of limitations. *Eisele v. Meyers*, 929 S.W.2d 752, 755 (Mo.App.1996). The statutory time limit begins to run "when the damage resulting [from the wrong] is sustained and is capable of ascertainment, and, if more than one item of damage, then the

---

2. All statutory citations are to Missouri Revised Statutes 2000, unless otherwise indicated.

3. All rule citations are the Missouri Rules of Civil Procedure (2007).

last item." Section 516.100. Damage resulting from an actionable wrong is capable of ascertainment when "the evidence [is] such to place a reasonably prudent person on notice of a potentially actionable injury." *Bus. Men's Assurance Co. of Am. v. Graham,* 984 S.W.2d 501, 507 (Mo.banc 1999). The mere existence of the wrong coupled with nominal damage is not enough to accrue the statute. *Powel v. Chaminade Col. Preparatory, Inc.,* 197 S.W.3d 576, 584 (Mo.banc 2006). However, all possible damages need not be known, or even knowable, before the statute accrues. *Klemme v. Best,* 941 S.W.2d 493, 497 (Mo.banc 1997). In order for the statute to accrue, plaintiff must have knowledge of the wrong and at least nominal damage, or of something that puts plaintiff on notice to inquire further. *Powel,* 197, S.W.3d at 584–85.

The evidence at trial showed that Imhoff, as board president, had sole control over the Cemetery's finances during the relevant period of 1997 through 2000. Although Imhoff failed to properly account for many financial transactions during that period, the Cemetery's board members were unaware of any specific problem until December 10, 2000. Board members became concerned on that date when Imhoff was unable to answer questions about the funds from a Cemetery fundraising project, which were supposed to be placed in two certificates of deposit.

The wrong occurred and damages existed when Imhoff first converted or misappropriated Cemetery funds as early as 1997, but those facts alone are insufficient to trigger the statute of limitations. *Klemme,* 941 S.W.2d at 497. The actionable wrong was not "capable of ascertainment" until December 10, 2000, when Imhoff's vague responses gave the Cemetery board notice of a potential financial problem. Prior to that time, at least one board member had a suspicion of inappropriate activity but no specific facts to indicate the possibility of financial loss. Because the board had reasonable grounds for suspecting wrongful conduct and at least nominal damage on December 10, 2000, the statute of limitations for the conversion claim began to run on that date.

The Cemetery filed its three-count petition against Imhoff on November 10, 2005, within the five-year limitations period of Section 516.120. Accordingly, the conversion claim was timely and Imhoff was not entitled to relief on his statute of limitations defense. Point I is denied.

### PREJUDGMENT INTEREST

In Point II, Imhoff contends the trial court erred in awarding prejudgment interest because the Cemetery failed to make a specific demand for payment, as required by Section 408.040.2.[4] The Cem-

---

4. Section 408.040.2 provides in relevant part: Notwithstanding the provisions of subsection 1 of this section, in tort actions, interest shall be allowed on all money due upon any judgment or order of any court from the date of judgment is entered by the trial court until full satisfaction. All such judgments and orders for money shall bear a per annum interest rate equal to the intended Federal Funds Rate, as established by the Federal Reserve Board, plus five percent, until full satisfaction is made. The judgment shall state the applicable interest rate, which shall not vary once entered. In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives, and to such party's liability insurer if known to the claimant, and the amount of the judgment or order exceeds the demand for payment or offer of settlement, then prejudgment interest shall be awarded, calculated from a date ninety days after the demand or offer was received, as shown by the certified mail return receipt, or from the date the demand or offer was rejected without counter offer, whichever is earlier. In order to qualify as

308

etery concedes that it failed to comply with the statutory prerequisites and, thus, the award of prejudgment interest dating back to December 10, 2000, was improper. The Cemetery agrees that it is only entitled to statutory interest from the date of the judgment, July 21, 2006. Section 408.040.2. Point II is granted.

CONCLUSION

The judgment is reversed with regard to the award of prejudgment interest. Pursuant to Rule 84.14, the Cemetery is hereby awarded statutory interest on the judgment from July 21, 2006. In all other respects, the judgment is affirmed.

All concur.

a demand or offer pursuant to this section, such demand must:

(1) Be in writing and sent by certified mail return receipt requested; and

(2) Be accompanied by an affidavit of the claimant describing the nature of the claim, the nature of any injuries claimed and a general computation of any category of damages sought by the claimant with supporting documentation, if any is reasonably available; and

(3) For wrongful death, personal injury, and bodily injury claims, be accompanied by a list of the names and addresses of medical providers who have provided treatment to the claimant or decedent for such injuries, copies of all reasonably available medical bills, a list of employers if the claimant is seeking damages for loss of wages or earning, and written authorizations sufficient to allow the party, its representatives, and liability insurer if known to the claimant to obtain records from all employers and medical care providers; and

(4) Reference this section and be left open for ninety days.