

# In the Missouri Court of Appeals
## Eastern District
### DIVISON FOUR

| | | |
|---|---|---|
| MARK BEHAN, | ) | No. ED101139 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | |
| FIREMEN'S RETIREMENT SYSTEM | ) | Honorable David L. Dowd |
| OF ST. LOUIS, | ) | |
| | ) | |
| Appellant. | ) | Filed: December 23, 2014 |

*Introduction*

The Firemen's Retirement System of St. Louis (FRS) appeals the trial court's judgment reversing the decision of the Board of Trustees of the Firemen's Retirement System (Board) to deny Mark Behan's application for accidental disability retirement benefits. On appeal, Mr. Behan claims that the trial court did not err in reversing the Board's decision because he filed his application for accidental disability retirement benefits within the five-year statute of limitations.[1] We affirm.

*Factual and Procedural Background*

Mr. Behan began working as a firefighter for the Fire Department of the City of St. Louis (Fire Department) in 1992, and he transferred to the fire marshal's investigative unit in 1995.

---

[1] Pursuant to Rule 84.05(e), when the circuit court reverses the decision of an administrative agency, the party aggrieved by the agency's decision files the appellant's brief. Therefore, Mr. Behan filed the appellant's brief, and the FRS filed its brief as the respondent.

During his nineteen-year tenure with the Fire Department, Mr. Behan investigated as many as 2,000 fires and 50 fatalities. Mr. Behan suffered no psychological disabilities prior to joining the Fire Department.

On May 3, 2002, Mr. Behan responded to a second alarm for a fire at the Gravois Refrigeration Company. In their efforts to extinguish the fire, two of Mr. Behan's co-workers and friends, Firefighters Rob Morrison and Derek Martin, died. Mr. Behan's investigation of this fire involved photographing the scene, interviewing witnesses, and seizing Mr. Morrison's and Mr. Martin's gear. Mr. Behan did not note any changes in his behavior immediately following the May 2002 fire.

In late 2007, Mr. Behan received a subpoena to testify in a deposition for a wrongful death action arising from the May 2002 fire. In preparation for his deposition, Mr. Behan studied photographs, reviewed the autopsy reports, and listened to the audio recordings "over a hundred times . . . in order to create a timeline and put everything in place." The audio recordings included "everything that transpired on radio, from the first calls concerning the fire, the dispatches, every company striking on the scene, communication between the companies, . . . any radio calls for distress, and everything clear through till [sic] the end of the incident," including Mr. Morrison's and Mr. Martin's "dying pleas."

In early 2008, after providing the deposition testimony, Mr. Behan began to suffer phobias, nightmares, difficulty sleeping, and suicidal ideation, and his "drinking increased significantly." In March 2008, Mr. Behan experienced his first "major panic attack" while riding an escalator at Busch Stadium.

Mr. Behan first visited Mary Carol Strauss-Barrett, a licensed clinical social worker, on April 28, 2008. On that date, Ms. Strauss-Barrett, diagnosed Mr. Behan with symptoms of post-

2

traumatic stress disorder (PTSD), and she began counseling him two to three times per week.[2] On May 18, 2008, Ms. Strauss-Barrett concluded that Mr. Behan suffered "Single PTSD," a substance abuse disorder, and a co-morbid mood disorder.

In June 2008, Mr. Behan took a medical leave, and Ms. Strauss-Barrett referred Mr. Behan to Dr. Monica Franks, whom Mr. Behan visited approximately three times per week from June 2008 to August 2008. Mr. Behan returned to work when Dr. Franks determined he was fit for duty.

In Spring 2009, Mr. Behan sought care through the Fire Deparment's employee assistance program (EAP) because he "was getting offtrack [sic]." In March 2010, at the recommendation of his marriage counselor, Mr. Behan went to Hyland Behavioral Health Center at St. Anthony's Medical Center, where he received two weeks' out-patient treatment for alcohol abuse.

In Fall 2010, Mr. Behan's primary care physician, Dr. Tim McCann, determined that Mr. Behan "needed some sort of medication," prescribed him Zoloft, and referred him to Dr. Adam

---

[2] Although not in the record, other courts have recognized that the *Diagnostic and Statistical Manual of Mental Disorders* (DSM IV) describes PTSD as follows:

> The essential feature of Posttraumatic Stress Disorder is the development of characteristic symptoms following exposure to an extreme traumatic stress or involving direct personal experience of an event that involves actual or threatened death or serious injury, or other threat to one's physical integrity; or witnessing an event that involves death, injury, or a threat to the physical integrity of another person; or learning about unexpected or violent death, serious harm, or threat of death or injury experienced by a family member or other close associate.

Brunell v. Wildwood Crest Police Dept., 176 N.J. 225, 240 (N.J. 2003) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 463 (4th ed. 2000)). "Although the symptoms may appear immediately after [a] traumatic event, they also may remain dormant until at least six months or more have passed, in which case the PTSD is specified as 'with delayed onset.'" Id. at 243 (citing Glenn R. Schiraldi, *The Post-Traumatic Stress Disorder Sourcebook* 6 (2000)).

Sky, a psychiatrist, who subsequently prescribed Lexapro and Depakote.[3] Mr. Behan took seven days' sick leave "in an attempt to adjust to the medication[s]," but eventually discontinued their use because he believed they "negatively affected" his work and personal life.[4]

Mr. Behan "went for a while without treatment and things got worse." He resumed drinking in February or March 2011, and he experienced suicidal thoughts in April and May 2011. In February and March 2011, Mr. Behan met several times with therapist Dan Christy through the EAP. Mr. Christy suggested that Mr. Behan consider a career change and recommended he return to private mental health care. In May 2011, Mr. Behan resumed treatment with Ms. Strauss-Barrett and, in June 2011, Mr. Behan went on another medical leave. Mr. Behan's last day of work was June 4, 2011.

On August 24, 2011, Mr. Behan filed an "application for disability retirement" alleging PTSD from a work-related event, namely the May 2002 fire. In support of his application, Mr. Behan submitted a letter from Dr. Laura Chackes, a psychologist, who evaluated Mr. Behan on August 9, 2011 and concluded that he suffered "Anxiety Disorder Not Otherwise Specified" and met "the majority of the diagnostic criteria for Posttraumatic Stress Disorder." In the notes from the initial evaluation, Dr. Chackes stated that Mr. Behan "never had prob[lem]s till March 30, 2008 – 1st panic attack" and he "didn't connect [that panic attack] @ 1st to trauma."

FRS referred Mr. Behan to several healthcare providers for independent evaluations to determine whether Mr. Behan was capable of continuing work as a firefighter. At the FRS's request, Drs. Jeffrey Farb, Psy.D., Craig Vorhees, Ph.D., and Cynthia Byler, D.O. evaluated Mr.

---

[3] Dr. McCann also referred Mr. Behan to a wound-care specialist because he had been "picking at" the skin on his arms and legs. Mr. Behan visited the wound-care specialist twice in December 2009.

[4] Mr. Behan did not wish to take anti-depressant medication because "it just didn't seem like an acceptable option to me to be all drugged up, you know, and numb going through life for something that was not my fault."

Behan in October 2010. In their reports, Drs. Vorhees and Byler noted that Mr. Behan's symptoms first presented in March 2008. Dr. Farb stated that Mr. Behan's "psychosocial history reveals a paucity of any significant psychopathology prior to 2007." All three healthcare professionals concluded that Mr. Behan was permanently and totally disabled as a result of PTSD, in combination with various other mental illnesses.[5]

On November 7, 2011, the Board granted Mr. Behan ordinary disability retirement benefits but denied his request for accidental disability benefits on the grounds that it was time-barred. Mr. Behan appealed the denial of accidental disability benefits. In his letter of appeal, he described his investigation of the May 2002 fire and stated, "[h]aving been on the scene and personally witnessing and experiencing the events, I lived the events over and over again in my mind through the audio recordings for weeks following the incident." Mr. Behan explained that, after the 2007 depositions concerning Mr. Morrison's and Mr. Martin's deaths, he "started reliving the tragic incident in the form of nightmares and other side effects," and "[s]hortly thereafter, in March and April of 2008, I began experiencing anxiety and panic attacks as well as other associated side effects."

The Board held an evidentiary hearing on October 8, 2012. At the hearing, Mr. Behan described the May 2002 fire and his relationship with the deceased firefighters. He explained that the May 2002 fire was "the first time I worked a fire scene where there was [sic] very serious injuries to firefighters, much less firefighters that I had worked with . . . ." Mr. Behan attended Mr. Morrison's and Mr. Martin's funerals and described the experience as "difficult, but I wouldn't classify it as traumatic." Mr. Behan did not notice any changes in his behavior and

---

[5] Dr. Farb diagnosed Mr. Behan with PTSD and "Intermittent Panic Episodes." Dr. Vorhees diagnosed Mr. Behan with depressive disorder NOS, PTSD, alcoholism, and generalized anxiety disorder with panic. Dr. Byler concluded that Mr. Behan suffered PTSD and obsessive compulsive disorder.

was able to perform his job until March 2008, stating that it was "a couple months after the[] depositions [in 2007], that I began having the panic attacks, started waking up to the nightmares of, unfortunately, the autopsy photos, the audio recordings." After the panic attacks and phobias began, Mr. Behan's alcohol abuse "really exploded" and he became suicidal, antisocial, and short-tempered.

Mr. Behan testified that he decided to seek counseling when his former partner expressed concern about the self-inflicted wounds and scars on Mr. Behan's arms.[6] At that time, Mr. Behan "had no idea . . . it was work[-]related. I knew nothing about PTSD." When Ms. Strauss-Barrett informed Mr. Behan at their first session that he was suffering PTSD, "it was like somebody turned on a light, like, well, that would kind of explain why all these things are happening."

On cross-examination, Mr. Behan acknowledged that he began experiencing grief at the firefighters' funerals and stated that he and his co-workers felt a "sense of loss . . . unlike anything any of us had felt before." However, Mr. Behan did not "recall ever having any sort of [mental health] problems until, you know, like 2008, the beginning of 2008. I guess I had sufficiently put everything in the back of my mind, and then the depositions brought it all out."

On November 9, 2012, the Board issued findings of fact and conclusions of law upholding its previous determination to deny Mr. Behan accidental disability retirement benefits and award only ordinary disability retirement benefits. In its findings of fact, the Board stated that Mr. Behan "did not sense anything out of the ordinary with his mental or physical well being [sic] until March of 2008 – six years after the [May 2002] fire . . . ." Specifically, the Board

---

[6] Mr. Behan explained: "[M]y old partner, Joe Swayne, started noticing scars on my arms, because I had been – I would lay at night scratching myself. They say I was hurting my – I was causing pain physically to myself to divert myself from the mental pain. That is how the therapist attributed it."

noted that, in 2008, "[i]n addition to experiencing panic attacks and nightmares, [Mr. Behan] began self-medicating with alcohol . . . .," "became short-tempered, withdrew from social contact, and developed road rage," "picked at his skin," and "developed suicidal ideation while on the job . . . ."

Despite these findings, the Board held that Mr. Behan's application was time-barred because he "did not timely file his application, as [his] injury was ascertainable on or about May 3, 2002." The Board reasoned:

> [Mr. Behan] testified that the fire on May 3, 2002, was different than any other fire because it was the first time for him to investigate a fire where serious injuries occurred to firefighters and because the Department lost two employees, who happened to be his friends. [Mr. Behan] testified that he felt grief from the loss of his two colleagues, that everyone was consoling one another at their funeral and that tears were shed. [Mr. Behan] said that "the sense of loss was unlike anyone of us had felt before."

Mr. Behan filed a petition for review of the Board's decision in the Circuit Court of the City of St. Louis. The trial court reviewed the record and concluded that the Board's determination that Mr. Behan's injury was "capable of ascertainment" in May 2002 was "unsupported by competent and substantial evidence upon the whole record." The trial court explained: "The Court does not believe that [Mr. Behan's] grief following the deaths of his friends is substantial evidence that his PTSD was 'capable of ascertainment' at that time." Based on its finding that Mr. Behan's PTSD was capable of ascertainment in March 2008, the trial court determined that Mr. Behan timely filed his application in August 2011. The trial court therefore reversed and remanded the Board's denial of accidental disability retirement benefits. The FRS appeals.[7]

---

[7] As previously stated, Rule 84.05(e) required Mr. Behan to file the appellant's brief because we review the decision of the Board, not of the trial court.

*Standard of Review*

When reviewing an appeal from a trial court's judgment addressing the decision of an administrative agency, we review the decision of the administrative agency and not the judgment of the trial court. Beckemeyer v. Firemen's Ret. Sys. of St. Louis, 424 S.W.3d 1, 4 (Mo.App.E.D. 2013). Nevertheless, in our mandate, we reverse, affirm, or otherwise act upon the trial court's judgment. Id.

"[W]e must determine whether the agency's findings are supported by competent and substantial evidence on the record as a whole; whether the decision is arbitrary, capricious, unreasonable or involves an abuse of discretion; or whether the decision is unauthorized by law." Sanders v. Firemen's Ret. Sys. of St. Louis, 393 S.W.3d 135, 137 (Mo.App.E.D. 2013) (citing Mo. Const. art. V, § 18); see also Mo. Rev. Stat. § 536.140.2.[8] "We defer to the agency's determinations on the weight of the evidence and the credibility of the witnesses." Beckemeyer, 424 S.W.3d at 4. Where, as here, the agency's decision was based on the interpretation or application of the law, we review its decision de novo. Id.

*Discussion*

In his sole point on appeal, Mr. Behan contends that the trial court did not err in ruling that the Board's decision to deny him accidental disability retirement benefits was "arbitrary, capricious and unsupported by competent and substantial evidence upon the whole record." More specifically, Mr. Behan asserts that the trial court properly found that "his application for disability retirement benefits was timely filed because his disability was not capable of ascertainment until March 2008 and his application was filed within the 5-year statute of

---

[8] All statutory citations are to RSMo 2000 as supplemented unless otherwise indicated.

limitations period." In response, the FRS argues that this court should affirm the Board's decision because Mr. Behan's claim is barred by the applicable statute of limitations.

Section 87.200 provides accidental disability retirement benefits to "any member who has become totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty or exposure while in the actual performance of duty in response to an emergency call . . . ." Mo. Rev. Stat. § 87.200. The parties agree that a claim for accidental disability retirement is subject to the statute of limitations set forth in Section 516.120.2, which applies to "an action upon a liability created by a statute" and "provides for a five-year limitations period." Hildebrand v. Firemen's Ret. Sys. of St. Louis, 527 F.2d 567, 569 (8th Cir. 1975).

A claim for accidental disability retirement benefits does not accrue, and the limitations period does not begin to run, "when the wrong is done. . ., but when the damage resulting therefrom is sustained and is capable of ascertainment . . . ." Mo. Rev. Stat. § 516.100. The Supreme Court has held that damages are "capable of ascertainment" when the "*evidence was such to place a reasonably prudent person on notice of a potentially actionable injury*." Powel v. Chaminade College Preparatory, Inc., 197 S.W.3d 576, 582 (Mo. banc 2006) (emphasis in original) (quoting Bus. Men's Assurance Co. of Am. v. Graham, 984 S.W.2d 501, 507 (Mo. banc 1999)). In other words, "the test is 'when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages.'" State ex rel. Marianist Province of U.S. v. Ross, 258 S.W.3d 809, 811 (Mo. banc 2008) (quoting Powel, 197 S.W.3d at 584). Importantly, "it is not the existence of a nominal claim for damage, but the occurrence and capacity of ascertaining

actual and substantial damage, that begins the running of the statute." Powel, 197 S.W.3d at 584 (citing Bus. Men's Assurance, 984 S.W.2d 501 at 508).

The FRS contends that Mr. Behan's injury was capable of ascertainment prior to March 2008 because his "symptoms commenced in 2002 and manifested 2005 through 2008." In support of its argument, the FRS cites Mr. Behan's: testimony that he experienced grief at the loss of co-workers "like nothing we ever felt before"; letter of appeal stating that he experienced flashbacks in the weeks following the May 2002 fire; and medical records, which state that he reported stress to his primary care physician as early as 2003. The FRS also points to evidence that Mr. Behan's alcohol abuse dated back to 2006 or 2007 and his marital problems commenced in 2005.

Contrary to the FRS's argument, the symptoms cited by the FRS would not have placed a reasonable person on "inquiry notice not just of the wrong and nominal immediate injury therefrom, but also that substantial, non-transient damage had resulted and was capable of ascertainment." Powel, 197 S.W.3d at 578. Grief at the death of one's friends and recurring memories of a recent, fatal incident are typical reactions to a tragedy. A reasonable person in Mr. Behan's position would have no reason to ascertain the extent of damages because the "shock and upset" he experienced in the weeks following the May 2002 fire did not evidence a substantial and lasting, or potentially actionable, injury. See, e.g., Bus. Men's Assur., 984 S.W.2d at 507 (chips of marble falling from building were not of such nature to alert the plaintiffs to major flaws with the building's design and installation); Gaydos v. Imhoff, 245 S.W.3d 303, 307 (Mo.App.W.D. 2008) (one board member's "suspicion of inappropriate activity [without] specific facts to indicate the possibility of financial loss" did not start the statute of limitations running); but see State ex rel. Old Dominion Freight Line, Inc. v. Dally, 369 S.W.3d

10

773, 779 (Mo.App.S.D. 2012) (statute of limitations began to run at the time of the accident and not seven hours later when the plaintiff began experiencing pain, because his knowledge that the collision caused his head "to be thrown forward in a whiplash-type motion" was sufficient to place a reasonable person on notice of an actionable injury.).

As to Mr. Behan's alcohol abuse, stress, and marital problems, there was no evidence of a causal connection between these issues and the May 2002 fire. If, in fact, these problems were early symptoms of Mr. Behan's PTSD, he was not aware and had no reason to know that the May 2002 fire was the cause. See, e.g., Elmore v. Owens-Illinois, Inc., 673 S.W.2d 434, 436 (Mo. banc 1984) (although the plaintiff suffered shortness of breath for many years, his work-related injury was not capable of ascertainment until he received the diagnosis of asbestosis).

The FRS also contends that, because Mr. Behan "did not suffer from repressed memory to excuse him from the application of the five-year statute of limitations" but rather "possessed full recall of the 2002 fire," his injury was capable of ascertainment in 2002. In support of its assertion that "the statute of limitations will not forgive stale claims unless the victim suffered repressed memory," the FRS cites Marianist Province, 258 S.W.3d at 811 and Dempsey v. Johnston, 299 S.W.3d 704 (Mo.App.E.D. 2009).

In Marianist Province, the plaintiff filed an action in 2006 against the defendants, a religious body and former school official, alleging that the school official physically and sexually abused him in 1984 and 1985. Marianist Province, 258 S.W.3d at 809. The plaintiff admitted that he always remembered the nonsexual details of the abuse (e.g., stripping, blindfolding, and hyperventilating the plaintiff), but not the sexual details. Id. at 810. The Supreme Court affirmed summary judgment for the defendants because the plaintiff's claim was barred by the statute of limitations. Id. at 811. The Court explained: "[e]ven though [the plaintiff] alleges he

11

did not remember the sexual details of these incidents, the conduct that he always remembered was sufficient to place a reasonably prudent person on notice of a potentially actionable injury." Id. (internal quotation omitted).

Similarly, in Dempsey, the plaintiff filed a petition against a priest and the Roman Catholic Church in 2004 based on sexual abuse that allegedly occurred in 1977 and 1978. Dempsey, 299 S.W.3d at 705. The trial court granted summary judgment to the defendants on the grounds that the plaintiff's claims were barred by the statute of limitations. Id. On appeal, the plaintiff argued that his cause of action did not accrue when he turned twenty-one years of age because "even though he always remembered the abuse and knew it was wrong, he did not know he had suffered substantial injuries as a result." Id. at 706. This court affirmed summary judgment for the defendants because the plaintiff's "memories of the sexual abuse were sufficient to place a reasonably prudent person on inquiry notice of a potentially actionable injury." Id. at 707; see also Graham v. McGrath, 243 S.W.3d 459, 463 (Mo.App.E.D. 2007) (the plaintiff's cause of action was capable of ascertainment when the plaintiff had "both knowledge of the acts constituting the sexual abuse, and was at the very least beginning to understand that he was a victim of sexual abuse.").

Neither Marianist Province nor Dempsey limited Powel's "capable of ascertainment" test to cases involving repressed memory of sexual abuse. Nor do those decisions support the FRS's assertion that Mr. Behan's injury was immediately capable of ascertainment because he did not repress his memory of the May 2002 fire. Rather, Marianist Province and Dempsey affirm Powel's holding that an injury is capable of ascertainment when the plaintiff has sufficient knowledge of the acts constituting the wrong to place a reasonable person on notice of a potentially actionable injury. Ross, 258 S.W.3d at 811; Dempsey, 299 S.W.3d at 707.

Finally, the FRS argues that Mr. Behan was not entitled to accidental disability retirement because Section 87.200 "limit[s] recovery for service connected disability to a response to an emergency call only" and did not "extend recovery. . . to an accumulation of events or combination of factors as [Mr. Behan] suggests." However, Mr. Behan has consistently attributed his PTSD to the May 2002 fire. In his application for disability retirement benefits, Mr. Behan stated: "The date of my injury was: 05-03-2002." Likewise in his petition for review of the Board's decision, Mr. Behan alleged that his injury occurred in May 2002 and his "symptoms of PTSD manifested themselves after 2008 . . . ." Furthermore, as the FRS stated in its response to Mr. Behan's petition for review of the Board's decision: "All the medical evidence submitted by [Mr. Behan] as well as the evaluations performed at the request of the FRS support the conclusion that the cause of [his] PTSD was the fire in May 2002. No medical expert opined that the cause of [Mr. Behan's] PTSD was the investigation he performed in 2007 and 2008."

The evidence in the record established that, at the funerals of Mr. Morrison and Mr. Martin, Mr. Behan felt a sense of intense grief and, in the "weeks following the incident," he relived the tragedy "over and over again in [his] mind." However, Mr. Behan was able to "put everything in the back of [his] mind" until late-2007, when he prepared for and participated in a deposition for the related wrongful death action. The undisputed evidence before the Board established that Mr. Behan's PTSD symptoms first presented in March 2008, when he began suffering phobias, nightmares, and anxiety attacks. Indeed, in its findings of fact and conclusions of law, the Board found that Mr. Behan "did not sense anything out of the ordinary with his mental or physical well being [sic] until March of 2008 – six years after the fire at the Gravois Refrigeration Company." Although the injury and nominal damages existed as early as

May 2002, the statute of limitations did not begin running until March 2008, when Mr. Behan's symptoms suggested "substantial, non-transient damage." Powel, 197 S.W.3d at 578. Because Mr. Behan's injury was not capable of ascertainment until March 2008, his August 2011 claim for accidental disability benefits was timely.

### *Conclusion*

The judgment of the trial court reversing the Board's determination is affirmed.

Patricia L. Cohen, Presiding Judge

Roy L. Richter, J., and
Robert M. Clayton III, J., concur.

14